E-FILED
Wednesday, 05 August, 2015  11:49:49 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| KEVIN W. CULP, MARLOW DAVIS, FREDDIE REED-DAVIS, DOUGLAS W. ZYLSTRA, JOHN S. KOLLER, STEVE STEVENSON, PAUL HESLIN, MARLIN MANGELS, GUS C. BROWNE II, JEANELLE WESTROM, SECOND AMENDMENT FOUNDATION, INC., ILLINOIS CARRY and ILLINOIS STATE RIFLE ASSOCIATION,  )))))))))))) | |
| Plaintiffs,  ) | |
| v.  ) | Case No. 3:14-CV-3320-SEM-TSH |
| ) | |
| LISA MADIGAN, in her Official Capacity as Attorney General of the State of Illinois; HIRAM GRAU, in his Official Capacity as Director of the Illinois State Police, and JESSICA TRAME, as Bureau Chief of the Illinois State Police Firearms Services Bureau,  )))))))) | |
| ) | |
| Defendants.  ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COME NOW the Plaintiffs, KEVIN W. CULP, MARLOW DAVIS, FREDDIE REED-DAVIS, DOUGLAS W. ZYLSTRA, JOHN S. KOLLER, STEVE STEVENSON, PAUL HESLIN, MARLIN MANGELS, JEANELLE WESTROM, SECOND AMENDMENT FOUNDATION, INC., ILLINOIS CARRY and ILLINOIS STATE RIFLE ASSOCIATION, by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Support of their Motion for Preliminary Injunction.

Dated: August 5, 2015                    Respectfully submitted,

                                         By:         /s/ David G. Sigale
                                                     David G. Sigale

                                                     Attorney for Plaintiffs

David G. Sigale, Esq. (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel:  630.452.4547
Fax:  630.596.4445
dsigale@sigalelaw.com

Attorney for Plaintiffs

*TABLE OF CONTENTS*

Table of Authorities ……………………………………………………..………... iv

Preliminary Statement …………………………………………………………... 1

Statement of Facts ……………………………………………………………… 3

    A.    Illinois's Statute Bars Non-Residents from Even Applying for
        Concealable Firearm Licensure…………………………………………. 3

    B.    The Application Prohibition's Impact on Plaintiffs and Others
        Similarly-Situated …………….…………………………………… 6

Summary of Argument …………………………………………………………13

Argument ………………………………………………………………………13

    I.    PLAINTIFFS WILL PREVAIL ON THE MERITS, AS ILLINOIS'S
        VIRTUAL BAN ON NON-RESIDENT CONCEALED CARRY
        LICENSE APPLICATIONS VIOLATES THEIR ARTICLE IV AND
        THEIR SECOND AND FOURTEENTH AMENDMENT RIGHTS …. 15

        1.    The Prohibition Violates Plaintiffs' Second Amendment
            Rights ……………………………………………………… 15
        2.    The Prohibition Violates Plaintiffs' Fourteenth Amendment
            Equal Protection Rights …………………………………… 17
        3.    The Prohibition Infringes on Plaintiffs' Enjoyment of a
            Fundamental Privilege Under Article IV………………………… 23
        4.    The Prohibition Violates Plaintiffs' Fourteenth
            Amendment Due Process Rights ………………………… 27

    II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE
        ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF.................... 29

    III.    TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO
        RELIEVE THE HARM  OF THE BAN ON CONCEALABLE
        FIREARM REGISTRATION BY QUALIFIED
        NON-RESIDENTS ................................................................ 31

    IV.    THE BALANCE OF INTERESTS FAVOR IMMEDIATE
        INJUNCTIVE RELIEF.......................................................... 33

Conclusion ......................................................................................... 34

## *TABLE OF AUTHORITIES*

<u>Cases</u>

*Allied Stores of Ohio, Inc. v. Bowers,*
    358 U.S. 522 (1959) ....................................................................... 18

*Att'y Gen. of N.Y. v. Soto-Lopez,*
    476 U.S. 898 (1986) ....................................................................... 20

*Baldwin v. Fish and Game Comm'n of Montana,*
    436 U.S. 371 (1978) ....................................................................... 25

*Brown v. Entm't Merchs. Ass'n,,*
    131 S. Ct. 2729 (2011) ................................................................... 20

*Buttitta v. City of Chicago,*
    9 F.3d 1198 (7th Cir. 1993) .......................................................... 28

*Christian Legal Soc'y v. Walker,*
    453 F.3d 853 (7th Cir. 2006) ........................................................ 32

*City of Cleburne v. Cleburne Living Center,*
    473 U.S. 432 (1985) ....................................................................... 15

*Clark v. Jeter,*
    486 U.S. 456 (1988) ....................................................................... 18

*Council of Insurance Agents & Brokers v. Molasky-Arman,*
    522 F.3d 925 (9th Cir. 2008) .............................................. 24, 25, 26, 27

*Corfield v. Coryell,*
    6 F. Cas. 546 (C.C.E.D. Pa. 1823) ............................................... 24

*District of Columbia v. Heller,*
    128 S. Ct. 2783 (2008)............................................................ *passim*

*Duncan v. Louisiana,*
    391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968) .............................. 28

*Elrod v. Burns,*
    427 U.S. 347 (1976) ................................................................. 29, 32

*Ezell v. City of Chicago,*
    651 F.3d 684 (7th Cir. 2011) ............................................. 16, 29, 30, 31, 32

iv

*Gateway E. Ry. Co. v. Term. R.R. Ass'n.,*
    35 F.3d 1134 (7th Cir. 1994) ............................................................... 31

*Gilbert v. Homar,*
    520 U.S. 924 (1997) ......................................................................... 28

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the*
*United States of Am., Inc.,*
    549 F.3d 1079 (7th Cir. 2008) ......................................................  5, 14, 33

*Grossbaum v. Indianapolis-Marion County Building Authority,*
    63 F.3d 581 (7th Cir. 1995) ................................................................. 15

*Hess v. Pawloski,*
    274 U.S. 352 (1927) ......................................................................... 23

*Hicklin v. Orbeck,*
    437 U.S. 518 (1978) ......................................................................... 25

*Hudson v. City of Chicago,*
    374 F.3d 554 (7th Cir. 2004) ............................................................... 28

*Joelner v. Wash. Park,*
    378 F.3d 613 (7th Cir. 2004) ......................................................... 14, 32

*Kikumura v. Hurley,*
    242 F.3d 950 (10th Cir. 2001) .............................................................. 31

*Lawson Prods., Inc. v. Avnet, Inc.,*
    782 F.2d 1429 (7th Cir. 1986) ............................................................. 14

*Libertarian Party v. Packard,*
    741 F.2d 981 (7th Cir. 1984) ......................................................... 14, 33

*Mance v. Holder,*
    2015 U.S. Dist. LEXIS 16679 (N.D.TX 2015) .................................... 20, 21

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ......................................................................... 28

*McDonald v. City of Chicago,*
    130 S. Ct. 3020 (2010) ................................................. 15, 19, 25, 29

*Mem'l Hosp. v. Maricopa Cnty.,*
    415 U.S. 250 (1974) ………………………………………………… 20

*Metropolitan Life Insurance Company v. Ward,*
    470 U.S. 869 (U.S. 1985) ……………………………………… 18, 21

*Minton v. St. Bernard Parish School Board,*
    803 F.2d 129 (5th Cir. 1986) …………………………………… 22, 23

*Moore v. Detroit School Reform Board,*
    293 F.3d 352 (6th Cir. 2002) …………………………………… 18

*Moore v. Madigan,*
    702 F.3d 933 (7th Cir. 2012) ……………………………… 1, 15, 16, 19, 25

*Nuxoll v. Indian Prairie School District No. 204,*
    523 F.3d 668 (7th Cir. 2008) …………………………………… 32

*Obergefell v. Hodges,*
    135 S.Ct. 2584, 192 L. Ed. 2d 609 (2015) ……………………….......... 22, 28

*Plyler v. Doe,*
    457 U.S. 202 (1982) …………………………………………… 17, 19

*Powell v Daily,*
    712 P.2d 356 (Wyo. 1986) …………………………………… 26

*Roland Mach. Co. v. Dresser Indus., Inc.,*
    749 F.2d 380 (7th Cir. 1984) ………………………………….. 29, 31, 33

*Rum Creek Coal Sales, Inc. v. Caperton,*
    926 F.2d 353 (4th Cir. 1991) …………………………………… 31

*Sklar v. Byrne,*
    727 F.2d 633 (7th Cir. 1984) …………………………………… 18, 19, 20

*Sonnleitner v. York,*
    304 F.3d 704 (7th Cir. 2002) …………………………………… 28

*Supreme Court of New Hampshire v. Piper,*
    470 U.S. 274 (1985) …………………………………………… 24

*Supreme Court of Virginia v. Friedman,*
    487 U.S. 59 (1988) …………………………………………… 23, 24, 25

*Toomer v. Witsell,*
    334 U.S. 385 (1948) ...................................................................... 24, 25, 26

*Ty, Inc. v. Jones Group Inc.,*
    237 F.3d 891 (7th Cir. 2001).......................................................... 14, 33

*Wallace v. Tilley,*
    41 F.3d 296 (7th Cir. 1994) ................................................................ 28

*Washington v. Glucksberg,*
    521 U.S. 702, 721 (1997) .................................................................... 18

*Williams v. North Carolina,*
    317 U.S. 287 (1942) ........................................................................... 22

*Williams v. Vermont,*
    472 U.S. 14 (1985) ............................................................................. 21

*Winter v. NRDC, Inc.,*
    555 U.S. 7 (2008) ............................................................................... 13

*Zobel v. Williams,*
    457 U.S. 55, 74 (1982) ................................................................. 24, 25

<u>Constitutional Provisions</u>

U.S. Const. Art. IV § 2 ................................................................... *passim*

U.S. Const. amend. II ..................................................................... *passim*

U.S. Const. amend. XIV................................................................... *passim*

<u>Statutes, Rules, and Ordinances</u>

430 ILCS 66/1, *et seq.* ....................................................................... 1

430 ILCS 66/40 ......................................................................... *passim*

720 ILCS 5/24-1 ................................................................................ 4

720 ILCS 5/24-1.6 ......................................................................... 5, 6

720 ILCS 5/24-2(a-5) ........................................................................ 6

Other Authorities

11A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2948.1
(2d ed. 1995) ................................................................. 31

Howell, Tim. *Privilege and Immunities of State Citizenship* 33-61 (1918) ........... 24

Meyers, *The Privileges and Immunities of Citizens in the Several States* (pt. 2),
1 Mich. L. Rev. 364 (1903) ............................................... 24

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### *PRELIMINARY STATEMENT*

In July, 2013, in response to the Seventh Circuit's ruling in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), in which the Court held that the fundamental individual Second Amendment right to keep and bear arms applied outside the home, the Illinois legislature passed the Firearms Concealed Carry Act (430 ILCS 66/1, *et seq*.), making Illinois the last state in the Union to allow the concealed carry of firearms within its borders.  As part of the FCCA, licensing procedures were put in place, and governmental review policies were implemented, some of which have since been revised.

Since its passage, approximately 100,000 concealed licenses have been issued by the State, for the most part without fanfare or incident.  For many, rights have been availed.  For one group, that has not yet come to pass.

The State determined that non-residents of Illinois are ineligible to even apply for a CCL, unless they live in a state pre-approved by the Illinois State Police. *See* 430 ILCS 66/40.  This determination apparently comes from the results of a questionnaire, which was sent to the other states.  If the ISP determines that the other state's CCL laws are not sufficiently similar to Illinois's, then all the residents of that state are barred from applying for an Illinois CCL, no matter how qualified or safe that person may be.  To date, only four states had questionnaire answers that satisfied the ISP – Hawaii, New Mexico, South Carolina, and Virginia.

Residents of the other forty-five states, and presumably Washington D.C. and U.S. territories, are out of luck and are ineligible to apply.

The Plaintiffs to this suit, residents of six of the other forty-five states, seek to correct that injustice. The statute is not a reciprocity statute. They are not trying to automatically receive a CCL. They would still have to meet all requirements and pay all fees before being granted a license. But the fact they are unable to even apply is such a blatant denial of constitutional rights that Plaintiffs' request for a preliminary injunction must be granted.

The ban flatly violates the Plaintiffs' Second Amendment rights to keep and bear arms, as well as violating their rights under the Privileges and Immunities Clause of Article IV of the Constitution, and their due process rights under the Fourteenth Amendment. Also, because qualified Illinois residents (and residents of the four "approved" states) are not restricted from applying for a concealed carry license in Illinois, Plaintiffs' right to equal protection of the law under the Fourteenth Amendment is being violated. The deprivations of constitutional rights subject Plaintiffs to irreparable harm, and is such a clear-cut unconstitutionally-inflicted harm that Plaintiffs are clearly likely to succeed on the merits by the conclusion of this litigation.

The State's law, if not preliminarily enjoined, also poses an immediate threat to public safety, as an entire class of persons who work, travel and visit in Illinois has been and continues to be wrongfully denied the right and ability the full ability to defend their persons from criminal attack. One need only follow the news to

know the danger people can face simply from walking in Chicago at night, and the

danger our men and women in uniform face even when they are home, supposedly

after they have left he war zone behind.   Illinois has no valid interest in completely

banning qualified non-residents from even applying for a CCL for the public

carrying of firearms when Illinois residents and those from a few states are not so

banned.  Therefore, the balance of interests falls heavily on Plaintiffs' side, and

preliminary injunctive relief is warranted and appropriate.

### STATEMENT OF FACTS

A.   *Illinois's Statute Bars Virtually All Non-Residents from Applying for a Concealed Carry License.*

430 ILCS 66/40 provides in pertinent part:

> (a)   For the purposes of this Section, "non-resident" means a person who has not resided within this State for more than 30 days and resides in another state or territory.

> (b)   The Department shall by rule allow for non-resident license applications from any state or territory of the United States with laws related to firearm ownership, possession, and carrying, that are substantially similar to the requirements to obtain a license under this Act.

> (c)   A resident of a state or territory approved by the Department under subsection (b) of this Section may apply for a non-resident license. The applicant shall apply to the Department and must meet all of the qualifications established in Section 25 of this Act, except for the Illinois residency requirement in item (xiv) of paragraph (2) of subsection (a) of Section 4 of the Firearm Owners Identification Card Act….

According to the Illinois State Police website, "substantially similar" as used

in the paragraph above means "the comparable state regulates who may carry

3

firearms, concealed or otherwise, in public; prohibits all who have involuntary mental health admissions, and those with voluntary admissions within the past 5 years, from carrying firearms, concealed or otherwise, in public; reports denied persons to NICS; and participates in reporting persons authorized to carry firearms, concealed or otherwise, in public through Nlets."

The Illinois State Police has deemed Hawaii, New Mexico, South Carolina and Virginia "substantially similar" for non-resident application purposes.  None of the individual Plaintiffs reside in these states.

720 ILCS 5/24-1 provides in pertinent part:

Sec. 24-1. Unlawful Use of Weapons

(a)    A person commits the offense of unlawful use of weapons when he knowingly:

(4)    Carries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm. . . ; or...

(10)    Carries or possesses on or about his person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm.

(b)    Sentence. A person convicted of a violation of subsection 24-1(a)(1) through (5), subsection 24-1(a)(10), subsection 24-1(a)(1 1), or subsection 24-1(a)(13) commits a Class A misdemeanor.

4

720 ILCS 5/24-1.6 provides in pertinent part:

Sec. 24-1.6. Aggravated unlawful use of a weapon

>   (a)    A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

>>   (1)    Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; or

>>   (2)    Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his or her own land or in his or her own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; and

>>   (3)    One of the following factors is present:

>>>   (A)    the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or

>>>   (B)    the firearm possessed was uncased, unloaded and the ammunition for the weapon was immediately accessible at the time of the offense.

>   (d) Sentence.

>>   (1) Aggravated unlawful use of a weapon is a Class 4 felony; a second or subsequent offense is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years.

A person who is carrying a concealed handgun in public for self-defense is subject to the above-referenced criminal penalties (with certain exceptions that do

not apply to any of the Plaintiffs) unless the person had a valid Illinois concealed carry license per 720 ILCS 5/24-1.6(3)(A-5),(B-5) and 720 ILCS 5/24-2(a-5).

These Code sections prohibit the Plaintiffs, and resident of the "other forty five states" from applying to obtain a concealed carry license, and therefore from the public concealed carry of firearms for self-defense.

It is unclear what Illinois's claimed purpose was for enacting this prohibition, which serves solely to discriminate against most every qualified non-resident in the United States, including the Plaintiffs and members of the organizational Plaintiffs outside of Illinois, though there is no purpose Illinois can offer that passes constitutional muster.

B.     *The Nonresident Prohibition's Impact on the Plaintiffs and Similarly-Situated Non-Residents.*

<u>Individual Plaintiffs</u>

Kevin W. Culp is a natural person and a resident of the City of Blairsville, State of Pennsylvania.  Culp is an Air Force Colonel stationed on orders at Scott Air Force Base near Belleville, IL, but is a legal resident of Pennsylvania who possesses a Pennsylvania driver's license and Pennsylvania license to carry a concealed weapon, as well as a concealed carry license from Florida.  Culp is also a Basic Pistol Instructor and meets the qualifications to be an Illinois concealed carry licensing instructor.

Marlow Davis is a natural person and a resident of the City of Milwaukee, State of Wisconsin.  He possesses a Wisconsin driver's license and a Wisconsin

6

license to carry a concealed weapon.  He is retired and spends approximately half of his time in Chicago.  He is the husband of co-Plaintiff Freddie Reed-Davis.

Freddie Reed-Davis is a natural person and a resident of the City of Milwaukee, State of Wisconsin.  She is the wife of co-Plaintiff Marlow Davis.  She possesses a Wisconsin driver's license and a Wisconsin license to carry a concealed weapon.  She is a nurse working in Chicago.

Douglas W. Zylstra is a natural person and a resident of the City of Munster, State of Indiana.  He possesses an Indiana driver's license and an Indiana license to carry a concealed weapon, as well as a concealed carry license and instructor certification from Utah.  Zylstra is an Illinois State Police certified concealed carry instructor working for a firearm training company in Lansing, Illinois.

John S. Koller is a natural person and a resident of the City of Castle Rock, State of Colorado.  He possesses a Colorado driver's license and a Colorado license to carry a concealed weapon, as well as concealed carry licenses from Utah, Nevada and Arizona.  Koller was born & raised in Chicago, Illinois, and still has family in the Chicago area, who he visits.  He also makes periodic business trips to Illinois.

Steven Stevenson is a natural person and a resident of the City of Aurora, State of Colorado.  He possesses a Colorado driver's license.  Stevenson has a Colorado resident concealed carry license, as well as a concealed carry license from Utah, and must occasionally traverse Illinois on I-80 or I-88 to visit relatives in both Illinois and Michigan.

Paul Heslin is a natural person and a resident of the City of Defiance, State of Missouri.  He is originally from Lake County, Illinois.  He possesses a Missouri driver's license and a Missouri license to carry a concealed weapon, as well as a concealed carry license from Florida, and a Type 03 federal firearms license.  He is also an Illinois certified concealed carry instructor.

Marlin Mangels is a natural person and a resident of the City of Keokuk, State of Iowa.  He possesses an Iowa driver's license and an Iowa license to carry a concealed weapon, as well as concealed carry licenses from Utah and Arizona.  Keokuk is just across the Mississippi River from Hamilton, Illinois.  Mangels frequently rides his bicycle up the River Road in Illinois, eats in restaurants in Hamilton, Illinois, travels to see his wife's family in the Chicago area, and travels I-80 through Illinois to visit friends in Massachusetts.

Jeanelle Westrom is a natural person and a resident of the City of Davenport, Iowa.  She possesses an Iowa driver's license and an Iowa license to carry a concealed weapon, as well as one in Georgia.  She has a firearms business in Davenport, Iowa but also a separate firearms business in Geneseo, Illinois, where she spends a considerable amount of her time.  Westrom also possesses three federal firearms licenses, which are required for her businesses.

The individual Plaintiffs are licensed to possess concealed handguns in their states of residence, but are prohibited by 430 ILCS 66/40 from obtaining Illinois concealed carry licenses, and thus carrying a handgun in a concealed manner in

8

Illinois for self-defense.  This is because their states of residence are not approved for applications for concealed carry licensing by the Defendants.

The individual Plaintiffs would apply for and obtain an Illinois concealed carry license, and would carry a loaded and functional concealed handgun in public in a concealed manner for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment as they understand it is unlawful for an unlicensed individual to carry a concealed handgun in Illinois.

<u>Organizational Plaintiffs</u>

Second Amendment Foundation, Inc. is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF's membership includes non-residents of Illinois who wish to obtain an Illinois concealed carry license but do not have a concealed carry license from an "approved state" according to the Illinois State Police.  SAF has over 650,000 members and supporters nationwide. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right privately to own and possess firearms.  SAF brings this action on behalf of itself and its members.

Members of SAF who are not residents of Illinois and do not have concealed carry licenses from an approved state, and thus are prohibited from applying for and obtaining an Illinois concealed carry license, would carry a loaded and functional concealed handgun in public in a concealed manner for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment

as they understand it is unlawful for an unlicensed individual to carry a concealed handgun in Illinois.

Illinois Carry is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Shelbyville, Illinois. Illinois Carry has over 10,000 members and supporters in Illinois, and many members outside the State of Illinois.  Illinois Carry is dedicated to the preservation of Second Amendment rights.  Among Illinois Carry's purposes are educating the public about Illinois laws governing the purchase and transportation of firearms, aiding the public in every way in its power, and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to purchase, possess, and carry firearms.

Members of IC who are not residents of Illinois and do not have concealed carry licenses from an approved state, and thus are prohibited from applying for and obtaining an Illinois concealed carry license, would carry a loaded and functional concealed handgun in public in a concealed manner for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment as they understand it is unlawful for an unlicensed individual to carry a concealed handgun in Illinois.

Illinois State Rifle Association is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois.  ISRA has over 17,000 members and supporters in Illinois, and many members outside the State of Illinois.  The purposes of ISRA include securing

the Constitutional right to privately own and possess firearms within Illinois,
through education, outreach, and litigation.  ISRA brings this action on behalf of
itself and its members.

Members of ISRA who are not residents of Illinois and do not have concealed
carry licenses from an approved state, and thus are prohibited from applying for
and obtaining an Illinois concealed carry license, would carry a loaded and
functional concealed handgun in public in a concealed manner for self-defense, but
refrain from doing so because they fear arrest, prosecution, fine, and imprisonment
as they understand it is unlawful for an unlicensed individual to carry a concealed
handgun in Illinois.

The individual Plaintiffs are members of the above-named organizations.

Defendants

Defendant Attorney General Lisa Madigan is sued in her official capacity as
the Attorney General of the State of Illinois, responsible for executing and
administering the laws of the State of Illinois, including 430 ILCS 66/40.  Defendant
Attorney General Madigan has enforced the challenged laws, customs and practices
against Plaintiffs and is in fact presently enforcing the challenged laws, customs
and practices against Plaintiffs.

Defendant Hiram Grau[1] is the Director of the Illinois State Police, and is the
person ultimately responsible for executing and administering the laws of the State
of Illinois, including Section 66/40 of the FCCA.  He is sued in his official capacity.

----

[1] Since the filing of this suit, Plaintiffs believe that Leo P. Schmitz replaced Hiram Grau as
Director of the Illinois State Police.  Since Grau was sued only in his official capacity,

11

Defendant Jessica Trame is the Bureau Chief of Firearms Services for the Illinois State Police.  She is the ISP employee directly responsible for the administration of the FCCA, and is the ISP employee directly responsible for the denial of concealed carry licensing to the Plaintiffs.  She is sued in her official capacity.

Every day that passes without relief from Illinois's CCL non-resident application prohibition, all non-residents visiting, working in, or spending time in Illinois who are otherwise qualified to obtain a concealed carry license, including the individual Plaintiffs and the members and supporters of Plaintiffs SAF, IC, and ISRA, are frustrated in their ability to carry handguns in a concealed manner for self-defense in Illinois, and to enjoy their constitutional rights.

But for the criminal enactments challenged in this complaint, and Defendants' enforcement of same, the Plaintiffs and the qualified non-resident organization members would obtain licenses and carry concealable firearms for self-defense, but refrain from doing so for fear of arrest, prosecution, fine and incarceration (*See* Plaintiffs' Declarations, attached hereto and incorporated herein).

---

Plaintiffs would not oppose any Motion to substitute Schmitz as the ISP Director in his official capacity.

## SUMMARY OF ARGUMENT

Illinois's prohibition on non-residents obtaining a concealed carry license for self-defense, regardless of said non-resident's qualifications to do so, unquestionably violates the constitutional guarantees of the Second and Fourteenth Amendments, as well as Article IV of the Constitution, as do any other of Illinois's various statutes that, regardless of their facial validity, undeniably frustrate constitutionally-secured equal rights of concealed handgun possession.

Considering the certainty of success on the merits, Plaintiffs are entitled to preliminary injunctive relief.  Plaintiffs are suffering, and will continue to suffer, irreparable harm in the absence of injunctive relief, for which there is no adequate remedy at law.  Granting Plaintiffs relief cannot injure Defendant.  And given the degree to which Illinois's concealed carry license prohibition threatens the safety of Plaintiffs, the public interest - already favoring the exercise of fundamental rights - is clearly satisfied by immediately enjoining Illinois's unconstitutional practices.

## ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

Under the Seventh Circuit's two-part preliminary injunction test, Plaintiffs must first establish: (1) some probability of success on the merits; (2) lack of an adequate legal remedy; and (3) irreparable injury in the absence of an injunction.

*See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008); *Ty, Inc. v. Jones Group Inc.*, 237 F.3d 891, 895 (7th Cir. 2001); *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir. 1986). Once these elements are met, the court conducts a "balancing phase" in which it "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts*, 549 F.3d at 1086.

In this case, these factors are applied to Plaintiffs' legal claims that the offending statute 430 ILCS 66/40 violates Plaintiffs' Second Amendment right to "keep and bear arms," their Fourteenth Amendment rights to due process and equal protection of the laws, and their Article IV rights to the same privileges and immunities as residents.  The Seventh Circuit has previously observed that when constitutional rights are at stake, "the merits of a dispute often are intertwined with the other three factors to be considered in the decision to issue or deny a preliminary injunction." *Libertarian Party v. Packard*, 741 F.2d 981, 985 (7th Cir. 1984). Indeed, "the likelihood of success on the merits will often be the determinative factor." *Joelner v. Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004). This is certainly the case here: If the Plaintiffs' constitutional rights are being violated by 430 ILCS 66/40, then Plaintiffs are likely to succeed on the merits, money damages are inadequate, the ongoing deprivation is irreparable, and interest-balancing must cede to the explicit constitutional protection. *See generally id*. Thus,

analysis should begin by assessing the merits of Plaintiffs' claim. *See, e.g.,*

*Grossbaum v. Indianapolis-Marion County Building Authority*, 63 F.3d 581, 586

(7th Cir. 1995).  However, Plaintiffs easily satisfy all these threshold requirements

for obtaining preliminary injunctive relief, and the balance of interests weigh

heavily in their favor.

I.      PLAINTIFFS WILL PREVAIL ON THE MERITS, AS ILLINOIS'S VIRTUAL
        BAN ON NON-RESIDENT CONCEALED CARRY LICENSE
        APPLICATIONS VIOLATES THEIR ARTICLE IV, AND THEIR SECOND
        AND FOURTEENTH AMENDMENT, RIGHTS.

**The Prohibition Violates Plaintiffs' Second Amendment Rights.**

As is by now well-known, the Supreme Court has held that the enumerated

right to possess a firearm for lawful purposes, most notably for self-defense, is

fundamentally core to the Second Amendment.  *Heller*, 128 S.Ct. at 2818.  *See also*

*McDonald*, 130 S.Ct. 3020, 3043 (2010).  That right extends outside of the home.

*Moore*, 702 F.3d at 937.

In *Moore*, the Seventh Circuit held the ban of the public carrying of firearms

violated the Second Amendment and was unconstitutional, and noted the

importance of the right to self-defense:

> Both *Heller* and *McDonald* do say that "the need for defense of
> self, family, and property is most acute" in the home, *id*. at 3036
> (emphasis added); 554 U.S. at 628, but that doesn't mean it is
> not acute outside the home. *Heller* repeatedly invokes a broader
> Second Amendment right than the right to have a gun in one's
> home, as when it says that the amendment "guarantee[s] the
> individual right to possess and carry weapons in case of
> confrontation." 554 U.S. at 592. Confrontations are not limited
> to the home.

*Id.* at 935-36.

The Court held that the State must make a "strong showing" where the challenged restriction curtails "the gun rights of the entire law-abiding adult population." *Id.* at 940. Arguably, the prohibition in this case violates the rights of even more law-abiding people than in *Moore.*

The Seventh Circuit has also compared the analysis of infringements of Second Amendment rights to those of infringements of First Amendment rights (*See Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (ban on gun ranges within State limits ruled unconstitutional). According to *Ezell*, infringements on the core Second Amendment right of possession for self-defense must satisfy a level of scrutiny approaching strict scrutiny. *Id.* at 708. This likewise means that Illinois's prohibition, ". . . a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end." *Id.*

When the standards required by *Moore* and *Ezell* are applied to this case, it is evident Illinois cannot defend its arbitrary prohibition. Further, under any level of scrutiny (rational basis not even being up for consideration under *District of Columbia v. Heller*, 128 S. Ct. 2783, 2818, fn 27 (2008)), 430 ILCS 66/40 fails.

In *Heller*, neither the D.C. Circuit nor the Supreme Court bothered to engage in any balancing test or other extended analysis before striking down Washington, D.C.'s ban on the possession of functional firearms for self-defense, as that law literally contradicted a "core" aspect of Second Amendment rights. *Heller*, 128 S.Ct. at 2818.

16

It is not within the State's constitutional power to ban otherwise qualified non-residents from possessing concealed firearms, including handguns which have been expressly deemed constitutionally protected by the Supreme Court. *See Heller*, 128 S.Ct. at 2817-18 ("Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home 'the most preferred firearm in the nation to 'keep' and use for protection of one's home and family,' would fail constitutional muster"). That Illinois has such a ban violates the Second and Fourteenth Amendments.

The State has no interest, let alone an extremely strong or compelling one, in denying virtually all non-residents the fundamental Second and Fourteenth Amendment rights of handgun possession in the same manner available to residents, based solely on than state of residence, especially when doing so by the arbitrary method of simply refusing them the ability to submit an application. In light of the above, a preliminary injunction against the enforcement of 430 ILCS 66/40 should be immediately entered.

### *The Prohibition Violates Plaintiffs' Fourteenth Amendment Equal Protection Rights.*

"The Fourteenth Amendment provides that '[no] State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'" *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (undocumented alien children being denied public school education violation of Equal Protection Clause). "The Equal Protection Clause was intended as a restriction on state legislative action inconsistent with elemental

17

constitutional premises." *Id.* at 217. "[T]his [Supreme] Court always has held that the Equal Protection Clause forbids a State to discriminate in favor of its own residents solely by burdening 'the residents of other state members of our federation.'" *Metropolitan Life Insurance Company v. Ward*, 470 U.S. 869, 878 (U.S. 1985) (quoting *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 533 (1959) (Brennan, J., concurring)).

"Under the Equal Protection Clause of the Fourteenth Amendment, courts apply strict scrutiny to statutes that involve suspect classifications or infringe upon fundamental rights." *Moore v. Detroit School Reform Board*, 293 F.3d 352, 368 (6th Cir. 2002) (citing *Clark v. Jeter*, 486 U.S. 456, 461 (1988) (explaining that under the Equal Protection Clause of the Fourteenth Amendment, 'classifications based on race or national origin, and classifications affecting fundamental rights are given the most exacting scrutiny') (internal citations omitted). "This level of review demands that the statute be 'narrowly tailored to serve a compelling state interest." *Reform Board*, 293 F.3d at 368 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)).

The quintessential example of how the legal landscape has changed, and why Plaintiffs will prevail in this matter is *Sklar v. Byrne*, 727 F.2d 633 (7th Cir. 1984). In *Sklar*, the plaintiff moved to Chicago five days after it passed its now-defunct handgun ban in 1982. He challenged the ban on equal protection grounds, claiming residents were grandfathered and were allowed to possess their previously-purchased handguns, while new residents suffered discrimination in not having the

same opportunity.  *Id.* at 636.  The District Court dismissed for failure to state a claim, and the Seventh Circuit affirmed.

First, the *Sklar* Court determined the standard of review, noting that: "Where the legislative classification works to the disadvantage of a constitutionally suspect class -- based, for example, on race, nationality, alienage or religious affiliation -- then courts may uphold the classification only if it is 'precisely tailored to serve a compelling governmental interest.' *Plyler v. Doe*, 457 U.S. 202, 216-17 & n.14, 72 L. Ed. 2d 786, 102 S. Ct. 2382 (1982). Similarly, **if the legislative classification impinges upon the exercise of a fundamental personal right, the classification must meet the same exacting 'compelling interest' standard**. 457 U.S. at 216-17."  *Sklar*, 727 F.2d at 636 (boldface added).

Because *Sklar* predated *Heller* and *McDonald* and *Moore*, the *Sklar* Court held that the grandfather clause and simultaneous handgun ban for all those who did not comply did "not impinge upon any federal constitutional right to bear arms" and said "[n]or is the asserted right to bear arms pivotal in the effective exercise of constitutionally guaranteed rights" and therefore applied rational basis scrutiny. *Id.* at 637.  Predictably, the Court upheld the ordinance.  *Id.* at 642-643.

It is well-known that the analysis of Second Amendment rights has changed since *Sklar* in 1984.  The handgun ban was struck down in *McDonald*, when the Second Amendment right to keep and bear arms was recognized to be fundamental. The ban on public carrying of firearms was struck down in *Moore*, when the Seventh Circuit held the fundamental Second Amendment right to apply outside of the

home. Had the ban in *Sklar* even been attempted today, it would quickly be struck down as a violation of Second and Fourteenth Amendment rights.

The arbitrary and discriminatory law at issue must be analyzed using strict scrutiny. There is no reason, compelling or otherwise, to ban virtually all Americans from even applying for a CCL. The requirements of their home state, supposedly the basis for deciding which states meet the ISP's exacting standard, is irrelevant, since all applicants must meet Illinois's requirements in order to be qualified. Further, the law is not narrowly tailored, since there are ways short of a ban to ensure that only qualified non-residents obtain an Illinois CCL. "Strict scrutiny is a demanding standard that requires Defendants to show the governmental interest to be compelling and the associated regulation narrowly tailored to serve that interest. To be narrowly tailored, the curtailment of constitutional rights must be actually necessary to the solution." *Mance v. Holder*, 2015 U.S. Dist. LEXIS 16679 at *29 (N.D.TX 2015) (citing *Brown v. Entm't Merchs. Ass'n,*, 131 S. Ct. 2729, 2738 (2011)).

In *Mance*, the Court struck down the laws that collectively made up a federal interstate handgun transfer ban, which among other things prohibited people from purchasing firearms outside of their state of residence. In so doing, the Court held:

> The Supreme Court has also held that strict scrutiny is required where the challenged classification impinges on residency. *See Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 254-64 (1974) (holding that a challenge to a state durational-residency requirement to receive free, non-emergency medical care merited strict scrutiny, and the requirement was unconstitutional); *see also Att'y Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898 (1986). The Supreme Court applied strict scrutiny in situations where state laws discriminated against non-residents, and

20

those cases involved benefits offered by the state, not constitutional rights. *See id.*; *Mem'l Hosp.*, 415 U.S. at 254.

*Mance*, 2015 U.S. Dist. LEXIS 16679 at *43.

State laws have been successfully challenged under the Equal Protection Clause in other contexts as well.  In *Williams v. Vermont*, 472 U.S. 14 (1985), a person bought a car in Illinois and then moved to Vermont.  He was then forced to pay a "use tax" when he registered his car in Vermont, a tax which Vermont residents who purchased their cars out-of-state did not have to pay.  The Vermont Supreme Court upheld the tax and dismissal of plaintiff's complaint, but the U.S. Supreme Court reversed, holding: "Vermont may choose not to penalize old residents who used their cars in other States, but it cannot extend that benefit to old residents and deny it to new ones. The fact that it may be rational or beneficent to spare some the burden of double taxation does not mean that the beneficence can be distributed arbitrarily . . . we can see no relevant difference between motor vehicle registrants who purchased their cars out-of-state while they were Vermont residents and those who only came to Vermont after buying a car elsewhere. To free one group and not the other from the otherwise applicable tax burden violates the Equal Protection Clause." *Id.* at 27.  Discriminatory taxing of out-of-state corporations was also struck down under the Fourteenth Amendment's Equal Protection Clause.  *See Metropolitan Life Insurance Company v. Ward*, 470 U.S. 869 (1985).

In this case, a fundamental right is being denied to most out-of-state residents.  While the tax in *Williams* could not pass rational basis review, here

21

there is no way the CCL application ban will pass strict scrutiny.  *See Obergefell v. Hodges*, 135 S. Ct. 2584; 192 L. Ed. 2d 609, 634 (2015) ("Being married in one State but having that valid marriage denied in another is one of "the most perplexing and distressing complication[s]" in the law of domestic relations." (quoting *Williams v. North Carolina*, 317 U.S. 287, 299 (1942))).  The enumerated Second Amendment right cannot be treated inferior to the right to marry found by the Supreme Court in the Fourteenth Amendment.

In *Minton v. St. Bernard Parish School Board*, 803 F.2d 129 (5th Cir. 1986), the plaintiff, a Mississippi resident, alleged she was owed payment on a tort judgment by the defendant school board in Louisiana, arising from when a school bus operated by the board struck the plaintiff's daughter.  The plaintiff alleged the school board refused to appropriate funds to pay judgments owed to non-residents of the Parish, while paying the similar claims of Parish residents.  *Id.* at 131.  She also alleged the Board paid claims of Louisiana residents, while refusing to appropriate funds to pay claims of non-Louisiana residents.  *Id.* at 130.  The District Court dismissed plaintiff's complaint for failure to state a claim.  In reversing, the Fifth Circuit ruled: "Assessing her charge of discrimination on its face, as we must, we find that it is sufficient to state a claim for denial of that equality with residents that state agencies must accord non-residents. Even discretion may not be exercised on a discriminatory basis."  *Id.*

In ruling that the plaintiff's complaint could proceed on her Fourteenth Amendment equal protection claim, the Court held:

> [E]very person is entitled to equal protection, even with regard to interests that do not constitute life, liberty, or property in the constitutional sense.  If the Mintons can prove their allegation that the School Board illegally discriminates between residents and nonresidents of St. Bernard Parish, as they say in their complaint, or between residents of Louisiana and nonresidents, as they state in their brief, in determining whether to satisfy tort judgments, they are entitled at least to declaratory relief.

*Id.* at 132-133.

In this case, life and liberty are clearly at stake, as is the ability to exercise fundamental constitutional rights.  There is no proof required beyond the plain language of the statute and the Declarations of the Plaintiffs as to their injuries as a result of Illinois's law.  The Plaintiffs are being discriminated against in an arbitrary manner for no reason other than their states of residence.  This discrimination is resulting in the denial of fundamental rights.  This Court must enjoin the enforcement of 430 ILCS 66/40 as unconstitutional.

### The Prohibition Infringes on Plaintiffs' Enjoyment of a Fundamental Privilege Under Article IV.

U.S. Const. Art. IV, § 2, Clause 1 states: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

Article IV "prohibits state legislation discriminating against citizens of other States."  *Hess v. Pawloski*, 274 U.S. 352, 356 (1927).

"While the Privileges and Immunities Clause cites the term 'Citizens,' for analytic purposes citizenship and residency are essentially interchangeable." *Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 64 (1988).

23

In *Corfield v. Coryell*, 6 F. Cas. 546 (C.C.E.D. Pa. 1823), the federal circuit court held that privileges and immunities in respect of which discrimination is barred include

> protection by the Government; **the enjoyment of life and liberty ... the right of a citizen of one State to pass through, or to reside in any other State, for purposes of trade, agriculture, professional pursuits, or otherwise**; to claim the benefits of the writ of habeas corpus; to institute and maintain actions of any kind in the courts of the State; to take, hold and dispose of property, either real or personal; and an exemption from higher taxes or impositions than are paid by the other citizens of the State. (Emphasis added.)

Laws were unconstitutional that disadvantaged persons who made their homes in other states from exercising "fundamental rights." *See* Howell, Tim. *Privilege and Immunities of State Citizenship* 33-61 (1918); Meyers, *The Privileges and Immunities of Citizens in the Several States* (pt. 2), 1 Mich. L. Rev. 364 (1903).

> The primary purpose of the Privileges and Immunities Clause 'was to help fuse into one Nation a collection of independent, sovereign States.' *Toomer* [*v. Witsell*], 334 U.S. [385] at 395 [(1948)]. The clause 'was intended to create a national economic union,' *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 280, 105 S. Ct. 1272, 84 L. Ed. 2d 205 (1985), and 'was designed to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned.' *Friedman*, 487 U.S. at 64 (internal quotations omitted); *Toomer*, 334 U.S. at 395.

*Council of Insurance Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 933-934 (9th Cir. 2008).

"Our opinions teach that Art. IV's Privileges and Immunities Clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy."" *Zobel v. Williams*, 457 U.S. 55, 74

(1982) (O'Connor, J., concurring) (quoting *Toomer*, 334 U.S. at 395). The Clause protects a nonresident who enters a State to work." *Zobel*, 457 U.S. at 74 (O'Connor, J., concurring) (citing *Hicklin v. Orbeck*, 437 U.S. 518 (1978)).

First, the Court determines "whether the activity in question is 'sufficiently basic to the livelihood of the nation . . . as to fall within the purview of the Privileges and Immunities Clause.' *Friedman*, 487 U.S. at 64 (citations and internal quotation marks omitted). 'Second, if the challenged restriction deprives nonresidents of a protected privilege, we will invalidate it only if we conclude that the restriction is not closely related to the advancement of a substantial state interest.' *Id.* at 65 (citation omitted)." *Insurance Agents*, 522 F.3d at 934.

"In the first step of [the Court's] inquiry, it is '[o]nly with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally.' *Baldwin v. Fish and Game Comm'n of Montana*, 436 U.S. 371, 383, 98 S. Ct. 1852, 56 L. Ed. 2d 354 (1978)." *Insurance Agents*, 522 F.3d at 934. Certainly the fundamental right to protect one's self and family, wherever one goes, bears upon the vitality of the Nation.

In *Insurance Agents*, the Court found the right to sell insurance in another state to be a fundamental right or privilege covered by Article IV's Privilege and Immunities Clause. *Insurance Agents*, 522 F.3d at 934. The Second Amendment's right to defend one's life and those of one's family has been declared fundamental in *McDonald* (which largely cited to *Heller*) and *Moore*. Put simply, the right to armed

25

self-defense cannot be considered less fundamental than the right to sell insurance. The Privileges and Immunities Clause applies here.  *See also Powell v Daily*, 712 P.2d 356 (Wyo. 1986) (statute requiring Wyoming residency to get professional hunting and fishing guide's license violated Privileges and Immunities Clause where alleged justification was not rationally related to exclusion of nonresidents, no evidence supported claim that nonresidents were less likely to obey laws of state, and less discriminatory means of achieving state's goals of safety and compliance with game laws existed in testing procedure).

As for the second prong of the Privileges and Immunities analysis, "[a] 'substantial reason' for discrimination does not exist 'unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed.'"  *Insurance Agents*, 522 F.3d at 934 (quoting *Toomer*, 334 U.S. at 398).

There is no "substantial state interest" in refusing to allow people to apply for a CCL.  It is unclear what "evil" the ISP is designed to prevent by banning almost all non-residents from applying for a CCL, but whatever it is the Plaintiffs (and all other qualified non-residents) are not the problem.  For example, there is no evidence whatsoever that any violence problem in Illinois (assuming, *arguendo*, that such a problem exists) is caused by qualified non-residents.

If the non-resident applicant does not meet the qualifications that every Illinois CCL-holder must meet, then that person will be turned down.  It is ludicrous that persons out of state, including Plaintiffs in this case, can be Illinois

26

CCL instructors and cannot even apply to obtain a CCL themselves.  Plaintiff Culp is an active member of the military, with more firearms training than most persons, and cannot apply because he resides (when not being stationed in Illinois) in Pennsylvania.  The Plaintiffs would all qualify for a CCL if only they were not arbitrarily banned from applying simply because the ISP does not like their states of residence.  Just as the *Insurance Agents* Court noted that "[t]here is no evidence in the record that licensed nonresident agents and brokers are inherently less trustworthy or less competent insurance professionals than Nevada's resident agents," 522 F.3d at 936, so too it is that qualified CCL applicants from out-of-state are no less competent or untrustworthy that similarly-situated Illinois residents.  And if an individual applicant from out-of-state is not qualified, the FCCA has a solution- the applicant will be turned down for the CCL.  Discriminating against 45 of the 49 non-residents states in America is exactly what the Privileges and Immunities Clause was designed to prevent.  The restriction must be enjoined.

### *The Prohibition Violates Plaintiffs' Fourteenth Amendment Due Process Rights.*

Additionally, the virtual ban, which essentially denies concealed carry rights to virtually all qualified non-residents of Illinois without even the chance to show their qualifications to the ISP through the application process, is a violation of the Plaintiff's Fourteenth Amendment due process rights.

"Under the Due Process Clause of the Fourteenth Amendment, no State shall 'deprive any person of life, liberty, or property, without due process of law.' The fundamental liberties protected by this Clause include most of the rights

27

enumerated in the Bill of Rights." *Obergefell v. Hodges*, 135 S.Ct. 2584, 192 L. Ed. 2d 609, 623 (2015) (citing *Duncan v. Louisiana*, 391 U.S. 145, 147-149, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968)).

"To demonstrate a procedural due process violation, the plaintiffs must establish that there is '(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process.'" *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004) (quoting *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993)).

"Due process 'is not a technical conception with a fixed content unrelated to time, place[,] and circumstances[;]' instead, it 'is flexible and calls for such procedural protections as the particular situation demands.' *Mathews v. Eldridge*, 424 U.S. 319, 334, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976) (citations omitted). The process constitutionally required is determined by balancing three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safe-guards; and finally, the Government's interest.

*Gilbert v. Homar*, 520 U.S. 924, 931-32 (1997) (quoting *Mathews*, 424 U.S. at 335); *see also Sonnleitner v. York*, 304 F.3d 704, 712-14 (7th Cir. 2002); *Wallace v. Tilley*, 41 F.3d 296, 300 (7th Cir. 1994)." *Hudson*, 374 F.3d at 559-560.

The private interest affected by the State's virtual ban is great – Plaintiffs are completely deprived of their Second Amendment rights, and their ability to defend their lives on the same footing as Illinois residents. Further, there is no

28

process or procedure, pre- or post-deprivation, of which they can avail themselves to rectify the situation – short of Court intervention. That the Plaintiffs are being denied fundamental rights, without any procedure or process at all, is yet another reason why Plaintiffs are entitled to immediate injunctive relief against 430 ILCS 66/40 and its virtual non-resident ban.

## II.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF.

Plaintiffs, and the non-resident members of the organizational Plaintiffs, enjoy a fundamental right to keep and bear arms. *McDonald*, 130 S. Ct. at 3042. "[T]he inherent right of self-defense has been central to the Second Amendment right." *Heller*, 128 S. Ct. at 2817. The denial of constitutional rights, even if such deprivation were temporary, constitutes irreparable harm for purposes of granting injunctive relief (*See*, *e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Irreparable injury will continue to exist in the absence of an injunction because Plaintiffs "will suffer irreparable harm in the interim – that is, harm that cannot be prevented or fully rectified by the final judgment after trial." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (emphasis added).

As noted above, in *Ezell* the Seventh Circuit favorably compared the fundamental freedoms of the Second Amendment to those fundamental freedoms of the First Amendment and deemed the deprivation of either to be irreparable harm. The *Ezell* Court held that "[t]he loss of a First Amendment right is frequently presumed to cause irreparable harm based on 'the intangible nature of the benefits

29

flowing from the exercise of those rights; and the fear that, if those rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future.' . . .  The Second Amendment protects similarly intangible and unquantifiable interests.  *Heller* held that the Amendment's central component is the right to possess firearms for protection. (cite omitted). Infringements of this right cannot be compensated by damages."  *See Ezell*, 651 F.3d at 699.

Put simply, if 430 ILCS 66/40 is not enjoined, virtually all non-residents of Illinois, including the Plaintiffs, will continue to be unconstitutionally frustrated in their ability to exercise their fundamental Second Amendment rights.

Considering that the Second Amendment exists to secure the right of armed self-defense, the inability for non-residents to even apply to be able to defend themselves against violence in a manner allowed only to residents of Illinois and a few select states, also causes a profound loss of a sense of one's security, to say nothing of the irreparable harm resulting from a successful criminal attack.  Thus, the irreparable harm flowing from any delays in obtaining relief is palpable.

Additionally, the deprivation of the right of Plaintiffs and other non-residents to be treated equally under the law, and instead being discriminated due to their state of residence, in violation of the Equal Protection Clause of the Fourteenth Amendment, is an irreparable harm that continues so long as the offending statute is in place.  Equal protection "is essentially a direction that all persons similarly situated shall be treated alike."  *City of Cleburne v. Cleburne Living Center*, 473

30

U.S. 432, 439 (1985).  "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (citing 11A Charles Alan Wright *et al.*, Federal Practice and Procedure § 2948.1 (2d ed. 1995)); *See also Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 362 (4th Cir. 1991); *Ezell*, 651 F.3d at 699.

Under both the Second and Fourteenth Amendments, Plaintiffs are currently suffering the irreparable harm of the deprivation of their constitutional rights, and will continue to suffer said irreparable harm every day 430 ILCS 66/40 is not enjoined.

III.   TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO RELIEVE THE HARM OF THE BAN ON REGISTRATION BY QUALIFIED NON-RESIDENTS.

There is no way to quantify, in terms of money damages, the inability to engage in protected Second Amendment activity such as the concealed carry of a firearm such as a handgun for self-defense, or the discrimination of being classified solely based on state of residence in violation of Fourteenth Amendment Equal Protection rights.  The infringement of constitutional rights is frequently considered to be beyond quantification with money damages.  This includes infringements of Second Amendment rights.  *See Ezell*, 651 F.3d at 699; *See also*, *e.g.*, *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d at 386; *see also Gateway E. Ry. Co. v. Term. R.R. Ass'n.*, 35 F.3d 1134, 1140 (7th Cir. 1994).

Seventh Circuit courts have repeatedly recognized that there is no adequate remedy at law for the deprivation of conduct that the Constitution affirmatively

protects, and that these types of constitutional deprivations are accordingly irreparable. The Seventh Circuit considers the deprivation of First Amendment rights to be irreparable *per se*, and it has often quoted Justice Brennan's statement in *Elrod* that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *E.g., Nuxoll v. Indian Prairie School District No. 204*, 523 F.3d 668, 669-70 (7th Cir. 2008) (quoting *Elrod*, 427 U.S. at 373 (*plurality op.*)); *accord Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006); *Joelner*, 378 F.3d at 620.  In *Ezell*, the Seventh Circuit recognized that "[t]he Second Amendment protects similarly intangible and unquantifiable interests" as those secured by the First Amendment. *Id.* at 699.  As such, the Seventh Circuit found that "[i]nfringements of this right cannot be compensated by money damages." *Id*. (emphasis added).

No legal remedies will be available to qualified non-residents who are unable to even apply for a concealed carry licenses because Illinois deprives almost all non-residents of their Second Amendment rights or the equal protection of Illinois's firearms laws.  And quite obviously, no legal remedies will suffice to compensate those killed or injured for the inability to lawfully possess concealed defensive arms, owing to Illinois's virtual ban.

IV.   THE BALANCE OF INTERESTS FAVOR IMMEDIATE INJUNCTIVE RELIEF.

Once the "threshold" factors have been met, the decision to grant or deny an injunction turns on the balance of equities.  *See Ty, Inc. v. Jones Group Inc.*, 237 F.3d at 895.  The court "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief" in light of the probable merit of the claim, and also considers the injunction's impact on non-parties (the "public interest").  *See Girl Scouts*, 549 F.3d at 1086.  The merits are intrinsic to this analysis because "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor."  *Roland Mach.*, 749 F.2d at 387; *accord Girl Scouts*, 549 F.3d at 1086; *see also Packard*, 741 F.2d at 985.

The Plaintiffs are certain to prevail on the merits.  Absent relief, they will continue to suffer irreparable injury in the loss of Second and Fourteenth Amendment rights, plus their Article IV privileges, if not actual physical harm.  The State has no legitimate interest in the prohibition; and the public interest strongly favors equal protection of the law, and the respecting of fundamental rights, to say nothing of the ability of all qualified law-abiding persons in Illinois to defend themselves equally.  The balance of interests could not more completely tilt in favor of immediate injunctive relief.

## *CONCLUSION*

Illinois cannot deny constitutional rights to an entire class of qualified

persons within its borders.  Plaintiffs respectfully request that the motion for

preliminary injunctive relief be granted.

Dated: August 5, 2015                              Respectfully submitted,


By: _____ /s/ David G. Sigale _____
                    David G. Sigale

                    Attorney for Plaintiffs

David G. Sigale, Esq. (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel:  630.452.4547
Fax:  630.596.4445
dsigale@sigalelaw.com

Attorney for Plaintiffs

## <u>CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING</u>

The undersigned certifies that:

     1.     On August 5, 2015, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

     2.     Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.


                                          <u>     /s/ David G. Sigale          </u>
                                                Attorney for Plaintiffs